Good morning, and may it please the Court. Peter Afrasiabi on behalf of the Appellant Direct Technologies. Your Honors, this Court should reverse because the settlement agreement is not subject to an interpretation of Rule 12 that allows a definitive conclusion that the intellectual property agreements, that is the vendor and confidentiality agreements, are in fact, over law, valid and enforceable. Counsel, are you arguing rescission? Are you making a rescission argument? Because it seems to me that under California law, you might have been able to say that the moment you filed the suit, you were rescinding the agreement, and there's certainly California law to that effect. We're not arguing rescission, Your Honor. We don't need to establish a rescission as between the Direct Technologies and Lithuania agreement. Don't you have to establish rescission to prevail on your fraudulent inducement claim? Not at all. All we need to establish is that EA, the third-party beneficiary, did not acquire rights. And in this litigation, the way we show that EA did not acquire rights is by showing that the original agreement lacked any legitimate offer, acceptance, and consideration in reality. And it was not procured legitimately. It was procured by fraud. When you say the original agreement, what are you talking about there? The underlying intellectual property agreements, the vendor and confidentiality agreements, which EA contends vest them with their copyright ownership interest in the underlying creative work. How does your client have any right to build on EA's character without the agreement existing? I mean, you couldn't do it if there weren't an agreement, could you? My client had an implied license without doubt, and that's on the face of the complaint. EA went to Lithuania and said, we want to take this two-dimensional object and have a three-dimensional sculpture created. You, Lithuania, go work on it. Lithuania came to my client and said, create this project. My client at that point absolutely had an implied license from EA to create that work. But my client did not sign at that point in time any agreement saying that my client would not be an author in that. And under the U.S. Copyright Act, Section 201, and this is the narrow complaint in this case, my client at that point in time was a co-author. Authorship vests at the moment of creation. My client hadn't assigned any rights. It didn't sign a work-for-hire agreement. It created it. And it was running along creating it, submitting the samples. EA even looked at them and improved them and made some modifications. And my client continued to do this work, expending hundreds of hours of effort creating this and being an author or co-author, because it may have been a derivative work. And then along comes another agreement. Yes. And the first agreement and the only agreement that came along then was after Lithuania had decided, with EA's knowledge, that they were never going to use my client. Right. They had gone and sourced it with an Asian company, Trek 2000, and they said to my client, you've got to sign this agreement. The consideration being, we're going to use you, even though they were never going to use. And your client signed the agreement. My client signed the agreement. And what was the effect of the agreement? Or what did the agreement purport to do? What did your client purport to do in this agreement? Transfer the intellectual property rights. Okay. Now, don't you have to take that apart in order to prevail in this case? Yes, we need to establish that agreement. And do you want to rescind that or not? We don't need to rescind in order to establish those. You have to somehow do away with that agreement to get where you want to go by virtue of your fraud claims, right? Yes. And how are you going to get rid of that agreement? Give us the legal theory that stands in your way. You read that on its face and it says, you know, you lose. You signed it away. And you're saying no good because that was a fraud. How are you going to get rid of that? By establishing that, number one, there was never any consideration given my client for its transfer. So you are attacking that. You're trying to rescind it. No, we're not. We don't have to sue Lithuania and seek a rescission in order to establish that they didn't secure rights. I'm not understanding your case at all because it seems to me that you signed away the rights and then you woke up and said, whoa, we were cheated. And so that agreement is no good. That's what your position is, right? Absolutely. Yeah, but there it is. And you're trying to undo it. And how do you undo it? It's with rescission. No, that's just it. Two points. It doesn't have to be with rescission. My client can establish that the contract was void out of the game. My client never got consideration. If that happened, the third-party beneficiary can't have taken any rights. So you're trying to undo that agreement by virtue of void of consideration. Absolutely. And on the face of the complaint at Rule 12, we have pled more than enough facts to show that my client was duped. It never was given any consideration. The promise to my client was you're going to get the contract even though the contract had been given to someone else. That wasn't in the agreement. That was in the agreement. Where did it say your client's going to get the rights? I missed that. It says this is tab 12, the vendor agreement. It says... Hold on a second. Tab 12, the vendor agreement. Yes, tab 12, it's the exhibit to tab 12, exhibit A. This is in the excerpt of record where? It's the excerpts of record tab 12. Volume what? Volume 2. Volume 2, the declaration of Gina Long? Correct, and it's exhibit A to the declaration of... Exhibit A, okay. Okay, so the vendor agreement, section A says Lithomania will purchase from Direct Technologies for resale to EA. When this agreement was signed and given to my client, Lithomania, with EA's knowledge... It's not failure of consideration. It's still rescission. Failure of consideration allows you to sue for breach. Or the contract's void of... Breach. Or the contract is void of initio? Yes. What's your authority for that? We cited Williston on contract citing an old California Supreme Court case at page 26 of our brief where it says, quote, in some situations the purported contract is regarded as void and may be disregarded without taking the procedural steps of rescission. So there are two paths, Your Honor. One is that there's no consideration. One is that in the litigation with EA, we'll establish that there was a fraud at the outset such that there was never a meeting of the minds and there was no transfer to begin with. And we can establish that vis-a-vis the third party beneficiary. The third party beneficiary can't take greater rights than as existed between the promisor and promisee. But the second point, Your Honor, and this is to your question about rescission, I don't believe we need to establish rescission. But if you believe we do, and the district court seemed to believe we did, and I think that was the analytical error. In the district court, you said we don't want to have anything to do with rescission. Yes. And the district court said, but you need to establish rescission. But if you want to look at the face of the settlement agreement at Rule 12 and interpret it to understand, did they affirm those underlying agreements and say, yeah, those are good? Or did they void them, rescind them, reject them? Or did they just leave status quo? If you look at the settlement agreement, the best interpretation of Rule 12 is actually that the agreements were obliterated and extinguished. If you go to the settlement agreement at Paragraph 5, Paragraph 5C, it says, this agreement is intended to be effective as a full and final accord and satisfaction. If you go to California state law, and I apologize this is not in our brief, but the California Civil Code, 1521, specifically says that an accord is an agreement to accept an extinction of an obligation. So the best interpretation of Rule 12 is that, in fact, there was an accord and satisfaction which extinguished the underlying agreement. And so if EA wants to say, notwithstanding that, we had rights, we're a third-party beneficiary, we have vested rights that we relied upon, which the district court intimated, that's something that can't be adjudicated at Rule 12. We don't know if they relied. You can't get that from the face of the complaint. If anything, the face of the complaint shows they didn't acquire those rights, go out and sell this drive and really believe that they had acquired the rights. They knew that my client had done the work. They knew my client was a co-author under copyright law, and my client had not signed an agreement. And they knew my client was never going to get the deal. Why are you resisting the rescission option? Well, only because I don't think we need to establish a rescission. And I think on the face of the settlement agreement, the best interpretation of where the district court went wrong is that the parties simply said, Lithomania and my client, Direct Technology, said, we're done. We're not fighting. We enter releases, and we're not going to modify. And this is the important provision about the recital in paragraph 3, which the district court interpreted in a way to vest EA with rights, notwithstanding the extrinsic evidence that unequivocally shows that could never have been the intent of the parties. Paragraph 3 says, DT and Lithomania, and this is paragraph 3 of the recital, DT and Lithomania do not intend this agreement to modify the rights or obligations of any third parties. We are not saying that EA's rights are affected. If they have rights, they have them. If they don't, they don't. And we're not saying that EA has obligations to us as a joint author, or they don't. If they have obligations, they have. If they don't, they don't. It's for another day and another litigation to be sorted out, and this is that other day. And so the district court read that to somehow say that, in fact, what the parties were doing by saying that they're not affecting the rights or obligations, that they, in fact, vested them with a release or with an affirmation of those underlying agreements, and you can't read the settlement agreement to do that. Counsel, you're down to about four minutes. You may wish to reserve or use the time, whatever you'd like. I'll reserve it then. Very well. We'll hear from Electronic Arts. Good morning. You may please to the court. My name is Robert Klieger, and I'm appearing on behalf of the appellee, Electronic Arts, Inc. The fundamental problem with the appellant's analysis in this case goes right to the point that Judge Trott was inquiring about, which is how does the appellant get rid of the vendor and confidentiality agreements, which undisputably, on their face, vest complete intellectual property ownership in Electronic Arts? The assumption, and it's an incorrect assumption, that appellant is making is that fraud in the inducement or failure of consideration, even though in this case they're exactly the same because the argument is there was no consideration because they never intended to perform the promise. But in either case, they do not render a contract unenforceable on its face. California law clearly provides that a plaintiff who purports to have been induced to enter into an agreement by fraud has two choices. They can either choose to rescind the contract and pay back whatever monies or other amounts were vested in it, or it can sue for fraud damages. The plaintiff makes one of those two elections. Now, in this case, and this isn't necessary to the decision, but in this case, the plaintiff actually did decide to sue for rescission. It sued Lithuania for rescission in state court in California, and it ultimately dismissed that claim with prejudice and released Lithuania. So there's no question that plaintiffs knew how to seek rescission. Some kind of settlement. Some kind of settlement. But the settlement, the notion that the district court did something wrong in looking at the settlement is a complete red herring in this case because the only reason the district court ever looked at the settlement is because plaintiff or appellant argued in opposition to the first motion to dismiss, the motion to dismiss the original complaint, that the settlement agreement actually rescinded the vendor and confidentiality. And it didn't. And it didn't. But the district court didn't need to reach that. Now, the district court held that it didn't, and they actually have an appeal. The appellants have not appealed that ruling, that the settlement agreement didn't. But that was an issue that they had put before the court. Let's assume that this agreement that we're talking about is subject to rescission. Even though they say that they're not pursuing it in that way, it seems that they are. As John Roberts said in the Obama case, well, they're saying it's not a tax, but it is. Sure. So let me respond to that in two parts. The first is they're actually not because challenging, arguing that something was induced by fraud is not the equivalent of seeking a rescission. As I said, they have two options. They could sue for damages or they could seek to rescind. Is it an either-or? What is it that says it can't try both? It is either-or. It's an election of remedies issue. Now, when they need to make that election is the question. Correct. But they made the election when they sued Lithuania, which is the only other party to the contract that they could sue for fraud. But I don't want to jump to the election of remedies point yet. Their complaint in state court sought rescission. Their complaint in federal court has not sought rescission. They've had two opportunities to amend with the district court clearly, as Appellants Council has recognized, saying to the appellant, you seem to be arguing rescission. Aren't you seeking rescission? The answer was no. It's not rescission. They had two opportunities to amend, to assert rescission either as a claim or in the prayer for relief. They chose not to. In fact, the dismissal that brings us before the court today was a dismissal without prejudice to amend. It had leave to amend in it, and the appellant chose not to amend and rather take up the appeal. So to the extent the appellant wanted to seek rescission, one, we know they knew how to do it because they had done it in the case against Lithuania, and two, the district court specifically identified in two separate rulings on motions of dismiss that that effectively is what they would have to argue here. Call that a binding waiver, the knowing relinquishment of an opportunity. Well, whether or not it needs to fall within the waiver category, it's something that there's now been a dismissal with prejudice entered against them. They had full and fair opportunity to raise this argument, to raise this claim or this prayer for relief on two separate occasions before the district court, and they made a knowing decision not to. So that claim is gone. It's dismissed with prejudice. They can't now say, well, we want the opportunity to go back and amend. They were given that opportunity. They chose not to. However, if the court were to determine that, essentially, somehow that the very nature of claiming fraud in the inducement is seeking rescission, such that rescission issue was somehow part of the complaint and the appellant was seeking rescission here, the California law is very clear that a party cannot seek rescission of a contract except as against the other party to the contract. Now, the appellant in their reply brief before this court says, well, we recognize that that's ordinarily the case, to go back to the ordinary type terms. We recognize that's ordinarily the case, but that shouldn't be the case here because their argument is Lithuania no longer had an interest in the vendor and confidentiality agreements. So we don't need to look to that ordinary rule. Well, as an initial matter, it was not announced as an ordinary rule. The rule is that you can only seek rescission against the other party to the contract that you're seeking to rescind. Ordinarily, you might try to join the other party, except they had already settled that. Well, so that then gets to this whole morass of rei judicata and collateral estoppel, which never became part of this case because they never did seek to join Lithuania. If they actually sought to join Lithuania in this action and therefore to assert a rescission claim against Lithuania, then all of the issues that they so want to litigate before this court would actually be right as to whether or not they could sue Lithuania on a claim that they had already sued Lithuania on and released Lithuania on and dismissed with prejudice. But none of those issues are actually in this case because they never sued Lithuania. They never sued the one party that they need to sue if they want to seek rescission. So not only did they not seek rescission as part of the complaint or the first amended complaint or file a second amended complaint that the court invited to assert a claim for rescission. One of the Supreme Court justices once said anytime somebody says something clear, that means that it's not. You said California law is clear that the only time you can seek rescission is when you're suing the party that's involved. Where does it say, where does California make that unqualified statement in its law? So that's in, it's in Shapiro v. Sutherland and then the case is cited within Shapiro v. Sutherland. It's a California Supreme Court decision 1998 cited in the briefs. The rule is that if you're seeking, if you're asserting that you were fraudulently induced to enter into a contract and asserting that you were entitled to seek rescission by virtue of that, the party that you entered into the contract with is a necessary party to that dispute. You can't go against some third party and seek rescission because the other party to the contract is necessarily going to have their interests affected by the decision. Now, I recognize that appellants here want to create an exception from that by saying, well, if the reasoning is it's because the other party to the contract is going to have their interests affected, then there should be an exception recognized where the other party to the contract is not going to have their interests affected. But even if this court were inclined to create an exception where no court in California or anywhere in any other jurisdiction that I'm aware of has recognized that kind of exception, the exception that they're trying to create would not apply here because Lithuania specifically refused to terminate the vendor and confidentiality agreements as part of their settlement because they would then be exposing themselves to a potential claim from third parties, including Electronic Arts. And this was in the record because they placed it in the record before the district court, the issues about how the settlement came about. Lithuania specifically said, we will not rescind. We will not terminate the vendor and confidentiality agreements as part of our settlement because we have an interest in ensuring that those agreements remain in effect. And now the exception they want to create is an exception that says, well, because Lithuania has no interest in those agreements remaining in effect, the court should therefore create an exception to this rule that you need to have the other party to the contract as a necessary party when you're seeking to rescind the contract. The exception they're urging this court to adopt would not apply on this very case. So the court doesn't even need to reach whether or not there should be an exception created to this rule because the exception they're arguing for simply would not apply. So this is a case where a declaratory judgment action and accounting action was brought by a party saying, we own, appellant says, we own a joint interest, joint ownership of this copyright. The district court looked at the agreements that were specifically referenced, and there's no dispute that the district court was entitled to look at the vendor and confidentiality agreements, looked at them and said clearly on their face they preclude any claim of ownership, co-ownership in this case. And the two contentions on appeal are, one, this was in the nature of an affirmative defense that should not have been considered at all. Well, if you're seeking a declaration that you own an interest in a copyright and you're seeking an accounting of royalties based on your contention that you own an interest in the copyright, then the fact that you gave away, transferred away, or never had an interest in the copyright is not in the nature of an affirmative defense. And if it is, it's certainly in the nature of one that was clearly presented on the face of these pleadings. But it simply is not. I mean, that is the prima facie case that the appellant in this case was attempting to prove and had the burden to prove below. And then when you get past that, the only argument is that the court should never have been even looking at these questions of enforceability or unenforceability of the vendor and assignment agreements as part of the motion to dismiss phase, but that's simply not correct. The fact of the matter is that without seeking rescission, which they were not, then there's no basis to argue that those agreements are no longer in effect and that the assignment of copyright provisions of those agreements are no longer in effect. And I could then go to the hypothetical, had they amended to put in a rescission claim and to join a necessary party to that claim, that frankly it would have been futile to do so because they had already released the claim against Lithuania, which is the necessary party. But we don't need to go there, and the court doesn't need to go there, because they made a knowing choice not to amend, not once but twice, to seek rescission of the agreements. And having not sought rescission of the agreements, the agreements are in full force and in effect and they are an absolute bar to a claim of copyright co-ownership. I will submit on that, Your Honor. Thank you, counsel. Mr. Afrabasi, you have some reserved time. Thank you, Your Honors. With respect to the jointer question you asked, Judge Strott, our claim here is under the U.S. Copyright Act and the exclusive jurisdiction is in the Federal Courts. We could not have joined to the state case. And so this gets to the heart of the question. When that release of the claim against Lithuania, the state case, spell it out. Sure. The state courts don't have jurisdiction over any copyright cases. In this case, had you never sued the other party in state court, you could have joined the other party and sought rescission against the agreement, could you not? In this case. If there had never been a prior lawsuit, sure, hypothetically we could have, but we didn't have to for this reason. There are many times where you can't seek rescission against the party on the basis that the party gave no consideration to the fraudity. The corporation could have been dissolved and no longer exist. It could be outside the jurisdiction of U.S. courts often. You can't always get a judgment of rescission. How do you get around the case of Shapiro v. Sutherland, the California Supreme Court case that says that what you're trying to do involves a necessary party and you didn't bother to bring the necessary party into this court? They're not a necessary party anymore because the agreement between my client and Lithuania has been replaced by the release. So we don't need to rescind with Lithuania. The release has stepped over that agreement as between my client and Lithuania. They're not a party. They don't have an interest in the contract anymore. So the only question then is if they're a third-party beneficiary, how do we know what Rule 12 is a matter of law that they unequivocally have invested with those rights when we didn't affirm the validity of the IP agreements and neither did Lithuania necessarily say. So you're saying the third-party beneficiary angle gets this whole thing into the court? Well, because they can't take greater rights than were ever given. And if the rights were procured by fraud, which we're allowed to prove in this case, then they don't have any rights. Is there any reason why you didn't take an opportunity to amend and say in the alternative we do such and so?  The complaint specifically pleads, our First Amendment complaint, that we have received no consideration that we were defrauded into the underlying agreement that purports to transfer the rights. That's been pled fully. There was nothing left to plead. Seems to me that if the court is saying, gee whiz, sounds like you're trying to rescind, that you would have said, okay, we'll put in a paragraph that does that. Well, Your Honor, if we had pled a rescission claim... Yeah, what's the problem with that? Lithuania would have come in and said, Rule 11, you can't sue us for rescission. You signed a release. Yeah, we released you. There's no claim left to plead against Lithuania because the settlement agreement steps over it. And the settlement agreement neither, the settlement agreement didn't say we're settling and releasing and we are agreeing that they have rights. So why isn't that an election of remedies problem? You proceeded against Lithuania, collected whatever you could collect. As far as we know, you may have collected on your fraud claim and received the consideration and so forth that you say you were denied. Well, that's a deal that your client made. So why are you allowed to come back and start down another path? Because that's not the deal we made. If you look at Section 4 of the settlement agreement, it specifically says, each party recognizes that the release is here or part of a compromise and no one admits the truth of the allegations, claims, or contentions. Lithuania didn't admit the truth of our assertion. That misses the point. That's not part of my question. You've reached a settlement with them. That kind of language appears in all sorts of settlement documents. That doesn't mean that you haven't obtained from Lithuania the money you claim you should have received under the agreement, the consideration that you weren't paid, the damages for fraud. You've made your deal with Lithuania. Now you want to go down a different path where Lithuania can't be brought in because you've released them. Why can you go down a different path? Lithuania can be brought in. They're obviously a witness to this, and if they didn't defraud us, that'll be established in this case when that issue's litigated. But if they did defraud you, you've already received your recovery for that. How is it you can now say, I get my fraud damages, and I also get to rescind and disregard whatever's in that agreement, even though you may have gotten your fraud damages over there? How do we know you're not pursuing double recovery on the same thing? Number one, because this claim is for an accounting under copyright law, which is a completely different claim to a fraud claim. And if they believe there's a double recovery... No, that's just not true. It's a different claim, but it's premised upon that first agreement going away completely. And you may have recovered on that first agreement already on your fraud claim. But my client's rights under that first agreement, if it was ever going to be getting anything, it was for selling product. And so it'd have some margin on the sales of those products. One's rights under U.S. copyright... You're in the deal. And for getting that money, they assigned whatever copyright privileges they had to somebody else. And my client never got the money. That's the point. But it may have in the settlement of the first claim. That's my point. But we're at Rule 12. There's no way to read the face of the complaint and make that conclusion. Your client made the deal. Your client elected remedies. Why isn't this an election of remedies problem? Because what my client received was a settlement where who knows what everyone's getting, right? Vis-a-vis only Lithuania and only claims against Lithuania. My client wasn't able, in a suit against Lithuania, to somehow monetize in the scheme of numbers and damages what one's rights are under federal copyright law. But your client wasn't going to have any rights. Your client had assigned those as part of selling the product to Lithuania. But my client never sold the product to Lithuania. But you made a settlement that got back whatever you were entitled to get back from Lithuania. Well, no, we didn't. That's the point. My client... Did your client sue Lithuania? Yeah. For what? For breach of contract. You settled the case? Yes. And what'd your client get? $50,000. And that's a fraction of the recovery vis-a-vis Lithuania. But it's got nothing to do with the recovery that one's entitled to as a co-author when you do an accounting for millions and millions of sales of a product under federal copyright law. It's a completely different question. And it's a question that couldn't have been litigated in the state case, what one's federal copyright damages may be. But if the state court never abrogated the contract, the rest of the provisions in the contract survived, did they not? Maybe, maybe not. The state court didn't opine one way or another, and neither did the settlement agreement. It doesn't say that they're valid, it doesn't say that they're invalid. It just says, as between us, we're dropping, we'll leave it for another day. That's the only way you can read the recital. Very well, counsel, you've gone way over your time. The case just argued will be submitted for decision, and the court will take a 10-minute recess. Another simple case with easy answers. Thank you.
judges: O'scannlain, Trott, Clifton